UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                - against -

JESUS CABRERA, a/k/a "Gee," et al.,

                Defendants.

----------------------------------------X

**MEMORANDUM AND ORDER**

22 Cr. 10 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    The fourth superseding indictment (the "S4 Indictment") charges seven defendants--Jesus Cabrera, a/k/a "Gee" ("Cabrera"); Michael Amaya, a/k/a "Miz" ("Amaya"); Alberto Concepcion, a/k/a "Chino" ("Concepcion"); Humberto Borges, a/k/a "Berto"; Frankie Capellan, a/k/a "Nitty"; Willie Harris, a/k/a "Light" ("Harris"); and Jose Figueroa, a/k/a "Chelo" (collectively, "defendants")-- with conspiracy to distribute and possess with intent to distribute fentanyl and four of those seven defendants--Cabrera, Amaya, Concepcion, and Harris--with possession of and aiding and abetting the use, carrying, and possession of firearms in furtherance of that conspiracy. See ECF No. 69 ("S4 Ind.") ¶¶ 1-5.

    Presently before the Court are Cabrera, Amaya, and Harris's (collectively, "movants") pre-trial motions. The following is a list of those motions: (1) motions for severance by Cabrera, Amaya, and Harris; (2) a motion for a bill of particulars by Harris; (3) a motion to dismiss Count Two of the S4 Indictment by Harris;

1

(4) motions for disclosure of witness identities and witness materials by Amaya and Harris; (5) a motion to suppress evidence based on warrantless searches by Amaya; (6) motions to controvert search warrants and suppress the fruits of those searches by Cabrera and Amaya; and (7) a motion for disclosure of Rule 404(b) evidence by Amaya.[1]  See ECF Nos. 80-83, 86, 96, 104.  For the reasons stated below, each of the motions is denied.

## BACKGROUND

On December 16, 2022, a grand jury returned the two-count S4 Indictment.[2]  See S4 Ind.  Count One charges defendants with conspiring to distribute and possess with intent to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl from at least in or about 2019, up to and including in or about February 2022, in the Southern District of New York in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  See id. ¶¶ 1-4.  For Cabrera, Amaya, and Concepcion, Count One also includes an enhanced penalty provision for conspiring to distribute mixtures and substances containing a

---

[1] Cabrera and Harris also moved for leave to join in the pre-trial motions of their co-defendants.  See ECF Nos. 82 at 30, 86 at 2, 109 at 1.  That request is granted.

[2] On December 20, 2021, Amaya was charged by a sworn complaint with two counts of narcotics trafficking in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C).  See ECF No. 1 ("Compl.") ¶¶ 1-4, 6.  On January 5, 2022, Amaya was indicted on the same charges.  See ECF No. 7.  On February 15, 2022, a grand jury returned a one-count superseding indictment (the "S2 Indictment"), charging movants and five co-defendants with the same narcotics conspiracy offense charged in Count One of the S4 Indictment.  See ECF No. 14 ¶¶ 1-3.

detectable amount of fentanyl that, on or about August 25, 2021, resulted in the death of Malik Rahman.  See id. ¶ 4.

Count Two charges Cabrera, Amaya, Concepcion, and Harris with knowingly using and carrying a firearm during and in relation to the drug trafficking crime charged in Count One, possessing a firearm in furtherance of that drug trafficking crime, and aiding and abetting the same, from at least in or about November 2021 up to and including in or about February 2022, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (2).  See S4 Ind. ¶ 5.

The present pre-trial motions were fully briefed on May 15, 2023 and May 22, 2023.  See ECF Nos. 100, 109, 110.[3]

## DISCUSSION

### 1. Motions for Severance by Cabrera, Amaya, and Harris

Cabrera, Amaya, and Harris move to sever their trials from their co-defendants on the grounds that they would be prejudiced by a joint trial.  See ECF Nos. 82 at 26-30, 86 at 2-14, 96 ¶ 1, 104 at 2-6.

Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of . . . defendants in an indictment . . . appears to

---

[3] Concepcion had also filed a motion to suppress a firearm and ammunition that were recovered from his apartment when he was arrested in connection with this case.  See ECF Nos. 84-85.  On June 6, 2023, the Court scheduled an evidentiary hearing on Concepcion's motion for June 29, 2023.  See ECF No. 111.  However, on June 26, 2023, the Government and Concepcion filed a joint request for the Court to convert the evidentiary hearing into a change of plea hearing, see ECF No. 115, which was granted by the Court, see ECF No. 116.  Although Concepcion did not enter a plea at the June 29, 2023 conference, he did withdraw his motion.

prejudice a defendant . . . the court may . . . sever the defendants' trials." Fed. R. Crim. P. 14(a). Nonetheless, "'[t]here is a preference in the federal system for joint trials of defendants who are indicted together.'" United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." Id. "'It would impair both the efficiency and fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)).

As such, motions for severance should "usually" be denied. United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). "'[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Rahman, 189 F.3d 88, 122 (2d Cir. 1999) (quoting Zafiro, 506 U.S. at 539). When determining whether either of these risks

is present, the Court must bear in mind that even "[w]hen the risk of prejudice is high . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. 539. "Whether to grant or deny a severance motion is committed to the sound discretion of the trial judge," and the Court's "exercise of that discretion is 'virtually unreviewable.'" Salameh, 152 F.3d at 115 (quoting United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989); United States v. Lasanta, 978 F.2d 1300, 1306 (2d Cir. 1992)).

The Court has considered each of Cabrera, Amaya, and Harris's purported justifications for severance, and concludes that separate trials are unwarranted under these standards.

First, movants' concerns of spillover prejudice are misplaced. Spillover prejudice "occurs in joint trials when proof inadmissible against a defendant becomes part of his trial solely due to the presence of co-defendants as to whom its admission is proper." Id. at 115; see ECF Nos. 82 at 26-28; 86 at 7-8, 11-13; 104 at 3-6. Here, however, most of the evidence against Cabrera, Amaya, and Harris's co-defendants will also be admissible against them because "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." Id. at 111; see also id. at 115 (noting spillover

prejudice is "an unlikely occurrence when all the defendants are charged under the same conspiracy count").

Second, varying levels of culpability between defendants, including some defendants being charged with an enhanced penalty related to the death of Malik Rahman, do not warrant severance. See ECF Nos. 82 at 29; 86 at 10-13.  The Second Circuit has made clear that "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003).  Likewise, "[t]he fact that one of several codefendants is tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that would require [severance]."  United States v. Hernandez, 85 F.3d 1023, 1029 (2d Cir. 1996).

Third, there is not a "serious risk of antagonistic defenses in this case" in which the "co-defendants would all blame one another as solely responsible for the death[]" of Malik Rahman. ECF No. 86 at 10; see also ECF No. 104 at 3.  As this Court recently explained in United States v. Sarnelli, there is no requirement that "an overdose death [] be reasonably foreseeable to a defendant in order to trigger death-resulting liability."  No. 22 Cr. 116 (NRB), 2023 WL 199659, at *6 (S.D.N.Y. Jan. 17, 2023); see also United States v. Sica, 676 F. App'x 81, 84 (2d Cir. 2017) (providing that the defendant's "foreseeability argument has been

rejected by every court of appeals to have considered the question") (collecting cases). Indeed, "Congress [did not] intend[] for the death-resulting penalties in 21 U.S.C. § 841 to apply only to the street-level dealer who distributes a deadly dose to a victim, but not to the suppliers, leaders, and managers directly involved in that distribution chain." Sarnelli, 2023 WL 199659, at *6 (internal quotation marks omitted).

Fourth, the "complexity and magnitude" of this narcotics conspiracy does not require severance. See ECF No. 82 at 29-30, 104 at 3-4. Further, to prove the existence of a conspiracy, beyond proving each defendant's alleged role, the Government proffers that it anticipates offering heavily overlapping evidence, including testimony from multiple cooperating witnesses. See ECF No. 101 ("Opp.") at 21. Offering the same evidence across several trials would be highly inefficient.

In any event, any risk of prejudice can be cured by limiting instructions. "[J]urors are presumed to follow instructions from the court." United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994). To rebut that presumption, there must be "an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense," which has not been established here. Id. Accordingly, the motions for severance are denied.

**2.** **Motion for Bill of Particulars by Harris**

Harris requests that the Court use its discretion to direct the Government to provide a bill of particulars on the grounds that he has not been given "sufficient notice or information to enable [him] to defend against the charges in this case." ECF No. 82 at 11; see also Fed. R. Crim. P. 7(f) ("The court may direct the government to file a bill of particulars.") (emphasis added).

"The purpose of a bill of particulars is to provide sufficient information about an offense to permit a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense." United States v. Castro, No. 08 Cr. 268 (NRB), 2008 WL 5062724, at *1–2 (S.D.N.Y. Nov. 25, 2008 (citing United States v. Butler, 351 F. Supp. 2d  121, 134 (S.D.N.Y. 2004)); see also United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. Macchia, 35 F.3d 662, 671 n.1 (2d Cir. 1994)). However, "a bill of particulars is not a general tool of discovery, nor is it a device to give the defense a road map to the government's case." Butler, 351 F. Supp. 2d  at 134 (citing Torres, 901 F.2d at 234; United States v. Kushner, 135 F.2d 668, 673–74 (2d Cir. 1943)).

Thus, a bill of particulars is required only "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Torres, 901 F.2d at 234. "An indictment need not identify all

alleged co-conspirators, nor specify the nature, time and place of every overt act the defendant or others allegedly took in furtherance of a conspiracy, nor must it set forth all the evidence the government intends to introduce." Castro, 2008 WL 5062724, at *2 (citing Butler, 351 F. Supp. 2d at 134).   "For that reason, requests . . . for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have almost uniformly been denied." United States v. Bin Laden, 92 F. Supp. 2d  225, 242 (S.D.N.Y. 2000) (internal quotations omitted).

Here, there is no need for a bill of particulars.  The charges pled in the S4 Indictment and the extensive discovery provided by the Government have apprised Harris of sufficient information to allow him to prepare for trial, avoid surprise, and interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.[4]   See Fed. R. Crim. P. 7(f); United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Heatley, 994 F. Supp. 483, 488 (S.D.N.Y. 1998).   Thus, Harris's motion for a bill of particulars is denied.

---

[4] It is undisputed: (i) that the Government's voluminous productions include text messages between Amaya and Harris; text messages that reference Harris's alleged alias, "Light"; and search warrant applications that describe the roles of Harris and his co-defendants in the alleged conspiracy, see ECF Nos. 81-2, 82 at 8-9, 101 at 26; (ii) that a publicly filed detention letter of March 18, 2022 details Harris's alleged role in the conspiracy and how firearms were allegedly used in furtherance of that conspiracy, see ECF Nos. 37, 82 at 9, 101 at 25-26; and (iii) that, on a January 27, 2023 call with Harris' counsel, the Government further described the evidence it anticipates offering at trial, including testimony from cooperating witnesses, see Opp. at 27; ECF No. 110 ("Harris Reply") at 5.

### 3. Motion to Dismiss Count Two of the S4 Indictment by Harris

Harris moves to dismiss Count Two of the S4 Indictment, which charges Cabrera, Amaya, Concepcion, and Harris with possession of and aiding and abetting the use, carrying, and possession of firearms in furtherance of the drug trafficking conspiracy in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (2). See ECF No. 82 at 21-23; S4 Ind. ¶ 5. Harris argues that dismissal is warranted because the Government lacks "evidence to establish a nexus between the charged firearms count and the charged drug selling operation" and therefore "cannot establish the elements of the charge." ECF No. 82 at 21, 22. Harris's argument fails.

"It is well settled 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). As such, "to satisfy the pleading requirements of [Federal Rule of Criminal Procedure] 7(c)(1), an indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000)); see also United States v. Rigas, 490 F.3d 208,

229 (2d Cir. 2007) ("[W]e must read an indictment "to include facts which are necessarily implied by the specific allegations made." (quoting United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002)); United States v. De La Pava, 268 F.3d 157, 162 (2d Cir. 2001) ("An indictment, however, need not be perfect, and common sense and reason are more important than technicalities.").

Here, Count Two of the S4 Indictment closely tracks the statutory language in 18 U.S.C. § 924(c), identifies the defendants charged with the offense, and includes the time period during which the offense occurred. See S4 Ind. ¶ 5; accord Harris Reply at 4 (conceding that the S4 Indictment "tracks the statutory language"). Thus, it "is sufficiently specific to permit [Harris] to prepare [his] defense and to bar future prosecutions for the same offense . . . [and] is therefore valid on its face." Alfonso, 143 F.3d at 776 (2d Cir. 1998). Harris's request that the Court look beyond the well-pleaded S4 Indictment and "inquir[e] into the sufficiency of the evidence [is] premature . . . as the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." Id. at 776-77; see also Fed. R. Crim. P. 12(b)(3) (providing that a defendant may raise "a defect in the indictment or information" by pretrial motion only if the "motion can be determined without a trial on the merits" (emphasis added)). Harris's motion to dismiss is therefore denied.

4. **Motion for Disclosure of Witness Identities and Witness Materials by Amaya and Harris**

Amaya and Harris seek early disclosure[5] of witness identities and witness material, including any Brady, Giglio, and Jencks Act materials and an exhibit list.  See ECF Nos. 82 at 18-21, 23-26; 104 at 17-20.  These requests are rejected.

The Court accepts the Government's good faith assurances that it understands, has complied with, and will continue to comply with its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963).[6]  Moreover, the requests for early disclosure of witness identities and impeachment materials are both contrary to well-settled law and premature.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001), United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980).  Amaya and Harris have made no specific showings that outweigh the safety risks for cooperating witnesses that would be presented by early disclosures.  See United States v. Cannone, 528 F.2d 296, 301-302 (2d Cir. 1975); United States v. Jimenez, 824 F. Supp. 351, 365 (S.D.N.Y. 1993).  And, in any event, a trial date has not yet been set.  The Court also notes the Government's good

---

[5] Harris requests the immediate disclosure of witness identities and the disclosure of witness material at least four weeks before trial.  See ECF No. 82 at 20, 23-25.  Amaya seeks immediate production of witness identities and witness material.  See ECF No. 104 at 17-19.

[6] At the June 29, 2023 conference, the Government stated on the record that it has and will continue to comply with its Brady obligations.  See also ECF Nos. 11, 54 at 3:18-4:13.

faith assurances that well in advance of trial it will provide the defense with witness identities and impeachment materials consistent with their obligations under the Jencks Act, 18 U.S.C. § 3500, and Giglio v. United States, 405 U.S. 150 (1972). See ECF No. 101 at 35, 41; accord United States v. Sterling, No. 17 Cr. 490 (NRB), 2019 WL 2006393, at *2 (S.D.N.Y. May 6, 2019); United States v. Ruiz, 06 Cr. 228 (NRB), 2010 WL 2541322, at *1 (S.D.N.Y. June 17, 2010); United States v. Sergentakis, No. 05 CR 230 (JFK), 2005 WL 1994014, at *1-2 (S.D.N.Y. Aug. 17, 2005); United States v. Underwood, 2005 WL 927012, 04 Cr. 424 (RWS) (S.D.N.Y. Apr. 21, 2005). Any disputes over timing can be resolved when a trial date has been set.

Accordingly, Amaya and Harris's motions for early disclosure of witness identities and material are denied.

5. **Motion to Suppress Evidence Based on Warrantless Searches by Amaya**

Amaya moves to suppress all evidence recovered in connection with his arrests on November 21, 2020 and July 7, 2021. See ECF No. 104 at 6-9. The Court addresses each arrest in turn, and denies both applications.

A. **November 21, 2020 Arrest**

The sworn complaint states that, on or around November 20, 2020 at approximately 1:45 p.m., New York Police Department Officers ("NYPD") officers conducted a traffic stop of a 2015 Audi

Q7 (the "Audi"), driven by Amaya, which had illegally tinted windows. See Compl. ¶ 6(a).  During that stop, a NYPD officer observed a jar of suspected marijuana in plain view in the back seat of the Audi and two bags of money on and behind the front passenger seat of the Audi.  See id. ¶¶ 6(b), (c).  An NYPD officer opened the bag in the front passenger seat and observed glassines of suspected heroin, and then arrested Amaya.  See id. ¶¶ 6(c), (d).  An inventory search of the Audi was conducted at the precinct, which recovered: (i) approximately 2,180 glassines of suspected heroin, containing 124 grams of mixtures and substances containing a detectable amount of fentanyl; (ii) 16 clear zip-lock bags of suspected cocaine; and (iii) over $50,000 in United States currency. See id. ¶¶ 6(d)-(f).

In his signed affidavit of February 8, 2023, Amaya alleges that at the time NYPD officers stopped his Audi, he "had not violated any traffic infraction or acted suspiciously in any way," see ECF No. 96-1 ¶ 6, and that, once stopped, the NYPD officers "claimed that they smelled an odor of marijuana coming from said vehicle," to which Amaya allegedly responded: "I have my license somewhere I have not smoked in the car. I am not stepping out of the car I do not consent to a search of the car."  Id. ¶¶ 7-8.[7]

---

[7] In his memorandum of law, Amaya further argues that when he was "initially observed inside of his vehicle the windows [were] fully open and no observation can be made about the level of tint on the windows," that the level of tint on the windows was "not performed until after Mr. Amaya [was] in custody and under arrest," and that "no odor of marijuana was present and no open container of

In response, the Government asserts that "the Body Worn Camera footage of the November 21, 2020 stop affirmatively proves that there was a lawful basis for the stop," and attaches photographs which the Government claims "confirm not only that three of the Audi's windows were up at the time of the stop, but that those windows were visibly tinted." ECF No. 106 at 2, 4-5. On June 23, 2023, the Government also produced a copy of the Body Worn Camera footage to the Court. See ECF No. 114. That footage clearly establishes that three of the Audi's four windows were up at the time the NYPD officers approached the Audi, and that those windows were visibly tinted. Accordingly, the Court concludes that the NYPD officers' stop of Amaya was founded upon "reasonable suspicion" that the Audi had illegally tinted windows in violation of N.Y. Veh. & Traf. Law § 375(12-a), providing a "sufficient basis

---

marijuana was visible inside of Mr. Amaya's vehicle." ECF No. 104 at 6-7. However, a defendant "seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact," United States v. Martinez, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) (quoting United States v. Washington, No. 12 Cr. 146 (JPO), 2012 WL 5438909, at *8 (S.D.N.Y. Nov. 7, 2012)), and can only make such a showing by "submit[ting] an affidavit by someone with personal knowledge that disputed facts exist." United States v. Noble, No. 07 Cr. 284 (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008). "In the absence of such an affidavit, or when the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary." United States v. Dewar, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007); accord United States v. Barrios, 2000 WL 419940, at *1 (2d Cir. 2000) (summary order) (no evidentiary hearing required on motion to suppress in the absence of "an affidavit of someone alleging personal knowledge of the relevant facts"); United States v. Del Rosario, No. 12 Cr. 81 (KBF), 2012 WL 1710923, at *2 (S.D.N.Y. May 11, 2012) ("[C]ourts have repeatedly stated that defendants must present a sworn affidavit from a person with knowledge of the underlying facts—and that in the absence of such an affidavit an[] evidentiary hearing is unnecessary."). As such, the Court only considers the allegations raised in Amaya's affidavit: (1) that NYPD officers had no basis to stop Amaya, (2) that Amaya had not smoked marijuana in the Audi, and (3) that Amaya did not provide consent for a search of the Audi. See ECF No. 96-1 ¶¶ 6-8.

under the Fourth Amendment for [the] law enforcement officers to make a traffic stop." United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009); see also United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995) ("The requisite level of suspicion is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" (quoting United States v. Glover, 957 F.2d 1004, 1009 (2d Cir. 1992)); United States v. Santana, 485 F.2d 365, 368 (2d Cir. 1973) (describing test for reasonable suspicion as "rather lenient").

Moreover, the Body Worn Camera footage contradicts Amaya's assertion in his affidavit that he had told NYPD officers that he had "not smoked in the car." ECF No. 96-1 ¶ 8. Indeed, in the footage, when Amaya is asked by an NYPD officer whether he had smoked marijuana in the Audi, Amaya clearly responds "not recently." In any event, Amaya does not contest in his affidavit that, during the stop, an NYPD officer observed a jar of suspected marijuana in plain view in the back seat of the Audi and two bags of money on and behind the front passenger seat of the Audi. See Compl. ¶¶ 6(b),(c). Courts have held that the presence of marijuana, which at the time of the stop was a violation of New York Penal Law § 221.05, gives "rise to a fair probability that contraband or evidence of a crime would be found." United States v. Carter, 173 F. App'x 79, 81 (2d Cir. 2006) (summary order); see also United States v. Vereen, No. 20 Cr. 566 (RA), 2021 WL 3771989, at *7 (S.D.N.Y. Aug. 23, 2021) ("[I]n the automobile context . . .

an officer's discovery of some marijuana in a vehicle gives rise to a fair probability that more marijuana will be found elsewhere in the vehicle."). As such, "[u]pon seeing the marijuana, the police had 'probable cause to believe that the vehicle contain[ed] contraband,'" which "extended to the defendant's entire car because "the permissible scope of a search pursuant to [the automobile] exception includes 'every part of the vehicle and its contents [including all containers and packages] that may conceal the object of the search.'" United States v. Cuevas, No. 15 Cr. 846 (PKC), 2016 WL 2766657, at *3 (S.D.N.Y. May 12, 2016) (citing United States v. Jackson, 652 F.2d 244, 251 (2d Cir. 1981)); see also United States v. Wilson, 699 F.3d 235, 245 (2d Cir. 2012) (providing that the "automobile exception" to the Fourth Amendment's warrant requirement provides that "officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime"); Guillen v. City of New York, No. 19 Civ. 11784 (NRB), 2023 WL 2561574, at *6 (S.D.N.Y. Mar. 17, 2023) ("When police have probable cause to search an entire vehicle, they may search all compartments, containers, and packages within the vehicle capable of concealing the object of the search." (citing Wyoming v. Houghton, 526 U.S. 295, 301 (1999)). The NYPD officers therefore had a lawful basis to search the Audi, and did not need Amaya's consent to search. See ECF No. 96-1 ¶ 8.

Accordingly, the Court finds that Amaya has failed to establish any "contested issues of fact going to the validity of the search" warranting an evidentiary hearing, United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992), and denies Amaya's motion to suppress evidence seized in connection with his November 21, 2020 arrest.[8]

**B. July 7, 2021 Arrest**

With respect to Amaya's July 7, 2021 arrest, the complaint states that an NYPD officer conducting surveillance observed an individual approach Amaya in the Audi, the individual hand Amaya money, Amaya reach in the vicinity of the center console and then hand the individual small objects, and the individual place those small objects into his pocket. See Compl. ¶¶ 6(g), (h). The NYPD officer stopped and searched the individual and found approximately two glassines of suspected heroin stamped "Anonymous" and zip-lock bags of suspected cocaine. See id. ¶ 6(i). NYPD officers then approached the Audi, which remained parked in the same location, and arrested Amaya, who was standing outside of the driver's side door at the time the NYPD officers

---

[8] Although Amaya does not challenge the search of his person following his November 21, 2020 arrest in his affidavit, see ECF No. 96-1, the Court notes that the contraband seized from the Audi provided a lawful basis for his arrest, see Compl. ¶¶ 6(c), (d), and that "[l]aw enforcement's search of [Amaya's] person incident to his lawful arrest was itself lawful." Cuevas, 2016 WL 2766657, at *4 ("[O]fficers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence.") (citing United States v. Robinson, 414 U.S. 218 (1973)).

approached.  See id. ¶ 6(j).  NYPD officers recovered 200 zip-lock bags of suspected cocaine from Amaya's person and approximately 33 glassines of fentanyl-laced heroin stamped "Anonymous" and over $22,000 in cash from the Audi.  See id. ¶¶ 6(k)-(l).

In Amaya's affidavit, he does not contest that the hand-to-hand sale described in the complaint occurred.  See ECF No. 96-1. Rather, he merely alleges that, when he was approached and detained by NYPD officers "on July 7, 2021, [he] was standing on the sidewalk in the vicinity of 142nd St. and Brook Avenue, New York, not acting suspiciously nor committing any crime" and was "standing outside of [his] legally parked 2015 Audi Q7 and walking [his] dog."  Id. ¶¶ 10-12.  Amaya alleges that he was thus detained "without probable cause or reasonable suspicion to do so" and subsequently his person and Audi were "searched . . . without consent."  Id. ¶¶ 12-14.  Such conclusory allegations do not create a material issue of fact warranting an evidentiary hearing, and thus Amaya's request for a hearing is denied.  See Dewar, 489 F. Supp. 2d  at 359.

More importantly, the NYPD officers had probable cause to arrest Amaya, search his person incident to arrest, and search the Audi on July 7, 2021.  Indeed, NYPD officers' observation of the hand-to-hand sale involving Amaya and subsequent search of the other individual participating in that sale gave the NYPD officers probable cause to arrest Amaya as those circumstances were

19

"sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by [Amaya]." United States v. Diaz, 854 F.3d 197, 203 (2d Cir. 2017) (citation omitted).  NYPD officers' "search of [Amaya's] person incident to his lawful arrest was itself [also] lawful." Cuevas, 2016 WL 2766657, at *4; see also Sloley v. VanBramer, 945 F.3d 30, 37 (2d Cir. 2019) ("[A] search incident to an arrest "constitutes an exception to the warrant requirement" the Fourth Amendment otherwise imposes." (quoting Riley v. California, 573 U.S. 373, 382 (2014)).  The hand-to-hand sale further provided NYPD officers with probable cause to search the Audi under the automobile exception to the Fourth Amendment's warrant, as those facts, "taken together, establish that the officers had probable cause to believe that Amaya was selling drugs from the Audi and, therefore, that the Audi was likely to contain 'contraband or other evidence of [drug trafficking].'" Opp. at 51 (citing Wilson, 699 F.3d at 245).  Thus, Amaya's motion to suppress evidence recovered in connection with his July 7, 2021 arrest is also denied.

**6. Motions to Controvert Search Warrants by Cabrera and Amaya**

Cabrera and Amaya move to controvert several judicially authorized search warrants obtained throughout the investigation in this case (collectively, the "Search Warrants") on the grounds that those search warrants were not supported by probable cause,

were not sufficiently particularized, and were overbroad. See ECF Nos. 86 at 14-24; 104 at 10-17.

Specifically, Cabrera challenges: (i) December 17, 2021; December 20, 2021; and February 1, 2022 cellphone location warrants for a cellphone number allegedly used by Cabrera, which were issued by Magistrate Judges Gabriel W. Gorenstein and Debra Freeman (the "Cabrera Cell Phone Warrants"), see ECF Nos. 101-1, 101-2, 101-3; and (ii) a February 15, 2022 premises warrant to search Cabrera's apartment and vehicle, which was issued by Magistrate Judge Sarah L. Cave (the "Cabrera Premises Warrant"), see ECF No. 101-4. Similarly, Amaya challenges: (i) a December 9, 2021 GPS warrant for location data relating to Amaya's cellphone, which was issued by Magistrate Judge James L. Cott (the "Amaya GPS Warrant"), see ECF No. 96-5; (ii) a December 14, 2021 iCloud warrant for Amaya's iCloud account, which was issued by Magistrate Judge Gabriel W. Gorenstein (the "Amaya iCloud Warrant"), see ECF No. 96-6; (iii) December 21, 2021 warrants authorizing the search of the cellphones seized from Amaya in connection with his federal arrest issued by Magistrate Judge Katharine H. Parker (the "Amaya Cellphone Warrants"), see ECF No. 96-7; (iv) a January 7, 2022 Instagram warrant for Amaya's Instagram account issued by this Court (the "Amaya Instagram Warrant"), see ECF No. 96-8; and (v) a January 10, 2022 iCloud expansion warrant for Amaya's iCloud

account issued by this Court (the "Amaya iCloud Expansion Warrant"), see ECF No. 96-9.

The Court has reviewed the challenged search warrants and their supporting affidavits and finds Cabrera and Amaya's arguments to be meritless.

## A. The Search Warrants Were Supported by Probable Cause

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. While "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," Illinois v. Gates, 462 U.S. 213, 232 (1983), it is generally understood that "probable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (quoting Gates, 462 U.S. at 238). "Due to this subjective standard, a reviewing court generally accords 'substantial deference to the finding of an issuing judicial officer that probable cause exists,' limiting [the] inquiry to whether the officer 'had a substantial basis' for his determination." United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (quoting United States v. Wagner, 989 F.2d 69, 72 (2d

Cir. 1993)); see also Rosa, 11 F.3d at 326 (2d Cir. 1993)
("[D]oubts should be resolved in favor of upholding the warrant.");
United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983)
("[T]he magistrate's finding of probable cause is itself a
substantial factor tending to uphold the validity of this
warrant.").

Here, each of the Search Warrants were supported by probable
cause.  In each application, the Government provided a lengthy
affidavit detailing the evidence against the defendant, which
establishes that there was a substantial basis to issue each
warrant.  See ECF Nos. 96-5, 96-6, 96-7, 96-8, 96-9, 101-1, 101-
2, 101-3, 101-4.

First, the affidavits supporting the Cabrera Cell Phone
Warrants describe statements of a cooperating source ("CS-1")--
who was arrested in connection with an undercover purchase of
narcotics stamped with the drug trafficking organization ("DTO")'s
"Supreme" logo--identifying Cabrera and Amaya as suppliers in the
DTO.  See ECF Nos. 101-1 at 12-14; 101-2 at 21-23.  The affidavits
further detail how there were 38 phone contacts from March 2021
and December 2021 between a phone number Amaya previously told law
enforcement belonged to him and a number that public databases
indicate belongs to Cabrera. See ECF Nos. 101-1 at 15, 101-2 at
24.  The affidavit supporting the third Cabrera Cell Phone Warrant
also describes information from a second cooperating source

("CS-2"), who was arrested following a series of undercover purchases of narcotics stamped with the DTO's "Thriller" logo,[9] including that CS-2 communicated directly with Cabrera and other DTO members to purchase narcotics and that another phone number that exchanged various text messages with other DTO members belonged to Cabrera.  See ECF No. 101-3 at 15, 17-19.[10]  Based on this evidence, the Court finds that Magistrate Judges Gorenstein and Freeman had a substantial basis to conclude that there was probable cause to issue the Cabrera Cell Phone Warrants.

Second, the affidavit supporting the Cabrera Premises Warrant, which incorporates the S2 Indictment, describes

---

[9] "CS-2 explained that the DTO first used the 'Supreme' stamp, but later switched to stamps called 'Off White' and 'Thriller.'"  See ECF No. 101-3 at 15.

[10] The agent further relies on his training and experience to establish probable cause.  For example, in the affidavit supporting the December 17, 2021 search warrant, the agent states:

> [B]ased on my training and experience, I know that individuals involved in narcotics trafficking often use their cellphone to communicate with suppliers, resellers, and customers, and that they often have their cellphones with them during and in relation to their narcotics trafficking activities. Because CABRERA's precise whereabouts are currently unknown, location data for the Target Cellphone will also assist law enforcement in its attempts to locate and surveil CABRERA in connection with future drug transactions. Moreover, based on my training and experience, I know that heroin dealers and their suppliers often store their narcotics at a particular location, along with proceeds from their narcotics sales and other evidence of the Subject Offenses. Finally, I believe that toll records and pen register data for the Target Cellphone will show who CABRERA was calling, and continues to call, to arrange narcotics transactions involving the "Supreme" logo. Accordingly, there is probable cause to believe that the historical and prospective location data, as well as pen register data and toll records, for the Target Cellphone will yield evidence of the Subject Offenses.

See ECF No. 101-1 at 15-16.

corroborated information from CS-1[11] and CS-2, who communicated directly with Cabrera and other DTO members to purchase narcotics. See ECF No. 101-4 at 6-10.  The affidavit further outlines law enforcement records, tracking information, and physical and video surveillance establishing that Cabrera lives at the subject premises with his wife and uses the subject vehicle in connection with narcotics trafficking.  See id. at 10-16.  It also references various text messages between Cabrera and other DTO members and relies on the agent's training and experience.  See id. at 16-17. Thus, Magistrate Judge Cave had a substantial basis to issue the Cabrera Premises Warrant.  In any event, however, Cabrera gave written consent on the day of his arrest to search his "vehicle, house, [and] phones," providing an independent basis upon which evidence recovered from those premises could be admitted.  See ECF No. 101-5.

Third, the affidavit supporting the Amaya GPS Warrant describes corroborated information obtained from CS-1, who stated that he met with Amaya every two to three days to obtain bundles of heroin.  See ECF No. 96-5 at 13.  CS-1 has observed: (i) other street-level dealers obtaining "Supreme"-stamped heroin from Amaya; (ii) Amaya on the phone with Cabrera; and (iii) Amaya routinely selling narcotics out of his dark Lexus vehicle.  See

---

[11] In the affidavit supporting the Cabrera Premises Warrant, CS-1 is identified as a cooperating witness ("CW-1").  See ECF No. 101-4 at 6-9.

id. at 13-14, 13 n.3.  The agent swearing to the affidavit further states that, while conducting surveillance, he has personally seen Amaya in a dark Lexus interacting with multiple individuals on the street, whom he believed to be involved in narcotics trafficking. See id. at 14.  In addition, the affidavit includes descriptions to law enforcement records that confirm Amaya's phone number and vehicle description.  See id. at 15.  The Court therefore concludes that Magistrate Judge Cott had a substantial basis to issue the Amaya GPS Warrant.[12]

Amaya does not identify any specific issues with the remaining warrants he challenges: the Amaya iCloud Warrant, see ECF No. 96-6; the Amaya Cellphone Warrants, see ECF No. 96-7; the Amaya Instagram Warrant, see ECF No. 96-8, and the Amaya iCloud Expansion Warrant, see ECF No. 96-9.  Instead, he merely argues that "[a]ny renewals of [the Amaya GPS Warrant] and those subsequent warrants

---

[12] The agent further relies on his training and experience, explaining:

> [B]ased on my training and experience, I know that individuals involved in narcotics trafficking often use their cellphone to communicate with suppliers, resellers, and customers, and that they often have their cellphones with them during and in relation to their narcotics trafficking activities. Because AMAYA's precise whereabouts are currently unknown, location data for the Target Cellphone will also assist law enforcement in its attempts to locate and surveil AMAYA in connection with future drug transactions. Moreover, based on my training an experience, I know that heroin dealers and their suppliers often store their narcotics at a particular location, along with proceeds from their narcotics sales and other evidence of the Subject Offenses. Finally, I believe that toll records and pen register data for the Target Cellphone will show who AMAYA was calling, and continues to call, to arrange narcotics transactions involving the "Supreme" logo.

See ECF No. 96-5 at 15.

related to Mr. Amaya were similarly flawed, as they were the fruits of the initial, improper warrant application." ECF 104 at 12. Having found that there was an ample basis for the Amaya GPS Warrant, the derivative argument is rejected. Moreover, the remaining warrants contain additional information supporting each reviewing judge's finding of probable cause.

For example, the Amaya iCloud Warrant notes that the subscriber information provided by Apple shows that the subject iCloud account belongs to Amaya. See ECF No. 96-6 at 15. The Amaya Cellphone Warrant and Amaya Instagram Warrant also describe a text message that appeared on the preview screen of the subject phone on the day of Amaya's December 21, 2021 arrest which reflects an order for narcotics and include the fact that $7,000 in cash that was bundled in a manner consistent with narcotics trafficking was recovered from Amaya and a vehicle he was using during that arrest. See ECF Nos. 96-7 at 9-10; 96-8 at 13. And, the Amaya iCloud Expansion Warrant describes communications between Amaya and Cabrera related to narcotics transactions, recovered in connection with the Amaya iCloud Warrant. See ECF No. 96-9 at 8-9.

Furthermore, the remaining warrants rely on the declarant's properly invoked training and experience regarding the relevance of the evidence they anticipate recovering in connection with the warrant. See ECF Nos. 96-6 at 15-18, 96-7 at 10-17, 96-8 at 13-16, 96-9 at 4; see also Kaskel v. Compagnone, 664 F. App'x 109,

111 (2d Cir. 2016) (providing probable cause "must be evaluated in light of the training and experience of the investigating agent"); United States v. Garlick, No. 22 Cr. 540 (VEC), 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023) (finding agent "properly invoked his training and experience investigating felons to supplement his account of the facts establishing probable cause"); United States v. Pinto-Thomaz, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018) (providing supporting affidavits "can rely on the affiants' training, experience, and the totality of the circumstances to support a 'common-sense' probability that the evidence may be found [in a device or account] sufficient for probable cause").

Lastly, an inquiry into the cooperating sources and witnesses referenced in the affidavits supporting the Search Warrants is wholly unnecessary as all of the affidavits informed the reviewing judges that the information from those sources has been corroborated by independent evidence and disclosed the cooperating witnesses' prior convictions.  See ECF Nos. 96-5 at 11 n.3; 96-6 at 12 n.1; 96-7 at 6 n.1; 96-8 at 10 n.1; 101-1 at 13 n.1; 101-2 at 22 n.1; 101-3 at 12 n.3, 15 n.6; 101-4 at 7 n.1, 10 n.5.  "The reviewing judges thus had all of the information necessary to determine whether to accept or reject information from those witnesses contained in the affidavits in making their probable cause determinations."  Opp. at 64.

**B. The Search Warrants Are Not Overbroad and Do Not Lack Particularity**

At various points in their motions, Cabrera and Amaya describe the Search Warrants as "overbroad" and "lacking particularity," but fail to specify the basis for those allegations. See ECF Nos. 86 at 14-22, 104 at 10, 14.  In any event, the Court has reviewed each of the challenged Search Warrants and finds that those warrants are not overbroad and do not lack particularity.

A warrant is overbroad if "its description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." United States v. Lustyik, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) (quoting United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013)) (internal quotation marks omitted).  "It has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized." United States v. Ulbricht, No. 14 Cr. 68, 2014 WL 5090039, at *14 (S.D.N.Y Oct. 10, 2014).  This principle applies equally to electronic accounts as it does to physical locations. See e.g., United States v. Ray, 541 F. Supp. 3d 355, 399 (S.D.N.Y. 2021) ("Courts in this Circuit . . . have uniformly held that law enforcement need not rely upon an email host company or any other private party to sift through

emails to determine what is relevant and that it may obtain a warrant to request all emails from an account.").

Meanwhile, a search warrant is "sufficiently particular under the Fourth Amendment" if it: (1) "identif[ies] the specific offense for which the police have established probable cause," (2) "describe[s] the place to be searched," and (3) "specif[ies] the items to be seized by their relation to designated crimes." United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017) (quoting United States v. Galpin, 720 F.3d 436, 445-46 (2d Cir. 2013)).

Here, each warrant properly set forth the basis for probable cause and was signed in conformity with the requirements of the Fourth Amendment.  See United States v. Tontisabo, No. 21 Cr. 701 (LAK), 2023 WL 411622, at *3 (S.D.N.Y. Jan. 25, 2023) (finding warrant was not overbroad and was "of a type routinely upheld by courts in this district" when it sought only evidence "of the subject offenses, intending to seize only information that was evidence of the crime") (collecting cases); Ray, 541 F. Supp. 3d at 398 (concluding warrants were not overbroad because they "identified the [s]ubject [o]ffenses and provided probable cause for each of them").

Each warrant also identifies the specific offenses for which probable cause has been established; describing the "place" to be searched, i.e., location data, electronic data, or premises; and permitting only the seizure of "evidence, fruits, and

instrumentalities" of the subject offenses.   "Each links the evidence to the criminal activity supported by probable cause"; it does "not give the agents broad authority to search for all evidence of the Subject Offenses without any limitation." Ray, 541 F. Supp. 3d at 389-90; see also United States v. Pugh, No. 15 Cr. 116, 2015 WL 9450598, at *22 (E.D.N.Y. Dec. 21, 2015) ("In general, warrants that limit a search to evidence relating to a particular crime, and which provide a list of examples as a means of limiting the items to be seized, are upheld when confronted with a particularity challenge." (citing United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990)); Lustyik, 57 F. Supp. 3d at 227 (S.D.N.Y. 2014) (finding that the challenged warrant met the particularity standard where it "broadly describe[d] the items to be seized as 'evidence, fruits, or instrumentalities' of specified federal crimes, [and] also set[] forth an illustrative list of items to be seized").  Thus, the Court concludes that Cabrera and Amaya's arguments as to overbreadth and particularity are baseless.

### 7. Motion for Disclosure of Rule 404(b) Evidence by Amaya

Lastly, Amaya moves for an order directing that the Government "immediate[ly] compl[y]" with Federal Rule of Evidence 404(b) by providing notice of any "evidence of other crimes, wrongs or acts it intends to introduce at trial."  ECF No. 104 at 20.

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "may be admissible for another purpose," such as proving motive or intent. Fed. R. Evid. 404(b)(1), (2). On request by a defendant in a criminal case, the prosecutor must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial," and "do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(3). However, Rule 404(b) "establishes no minimum time" for the Government to provide notice "because the evidence the [G]overnment wishes to offer may well change as the proof and possible defenses crystallize." United States v. Russo, 483 F. Supp. 2d 301, 309 (S.D.N.Y. 2007). Whether notice is reasonable therefore "depends on the circumstances of the case," United States v. Kevin, 97 Cr. 763 (JGK), 1999 WL 194749, at *13 (S.D.N.Y. Apr. 7, 1999), and "[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)." United States v. Ojeikere, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004).

Neither a trial date nor a pre-trial schedule has been set, and Amaya offers no reason why reasonable notice requires that the

Government disclose today the Rule 404(b) evidence that it intends to introduce at trial.  Moreover, the Government has represented that it "will provide notice of its intent to offer any such evidence in a timely manner consistent with its obligations and in advance of any motion in limine deadlines."  Opp. at 65. Accordingly, Amaya's motion for immediate disclosure of Rule 404(b) evidence is denied.

## CONCLUSION

For the foregoing reasons, each of the pre-trial motions is denied in its entirety.  The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 80, 86, 96.[13]

**SO ORDERED.**

Dated:     New York, New York
           June 29, 2023

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[13] The Court previously scheduled a status conference for July 27, 2023 at 12:00 p.m. to discuss next steps in light of this decision.  See ECF No. 111 at 1.