UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                - against -

JESUS CABRERA, a/k/a "Gee," et al.,

                Defendants.

----------------------------------------X

**MEMORANDUM AND ORDER**

22 Cr. 10 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The fourth superseding indictment (the "S4 Indictment") returned by a grand jury on December 16, 2022 contained two charges: (1) conspiracy to distribute 400 grams and more of mixtures and substances containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and for three defendants, an enhanced penalty provision for conspiring to distribute mixtures and substances containing a detectable amount of fentanyl resulting in the death of Malik Rahman ("Count One"); and (2) knowingly using and carrying a firearm during and in relation to the drug trafficking crime charged in Count One, possessing a firearm in furtherance of that drug trafficking crime, and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (2) ("Count Two").  See ECF No. 69 ("S4 Ind.") ¶¶ 1-5.

The instant motion brought by defendants Jesus Cabrera ("Cabrera") and Michael Amaya ("Amaya," and together with Cabrera,

1

"movants") is predicated on the reference to a glassine stamped with the logo "Supreme," in a report summarizing an investigation into the death of Mr. Rahman.[1]  Movants contend that the statement in the report that the glassine was recovered in the cell where Mr. Rahman died is falsified.  Movants move to dismiss the superseding indictment, or in the alternative, strike the enhanced penalty from Count One.[2]  Further, they request an in-camera review of the grand jury minutes and an order directing the Government to turn over exculpatory material.[3]  See ECF No. 140 ("Mot.").  The Government filed its opposition on January 31, 2024.[4]  See ECF No. 159 ("Opp.").  The motion was fully briefed on February 9, 2024.

---

[1] Cabrera filed the present motion on January 4, 2024.  That same day, Amaya joined the motion.  See ECF No. 145 at 3:10-13.
[2] The Court notes that although movants' papers seek to strike the enhanced penalty from Count Two, this Count relates to the firearm charge that is not at issue in the present motion. Nonetheless, the arguments in movants' paper will be construed to mean they seek to strike the enhanced penalty from Count One.
[3] Along with its motion, Cabrera's counsel transmitted a number of exhibits via email seeking to submit them under seal.  Six documents were not marked as exhibits and appear to be five laboratory reports and a New York Police Department Property Clerk Invoice.  The remaining documents that were marked as exhibits are: a Crime Scene Unit Recap Sheet bearing Bates numbers USAO_003104 – USAO_003105 and Arrest Report bearing Bates Number USAO_002265 (Movant's Ex. A); an investigation summary bearing Bates number USAO_003039 (Movant's Ex. B); a second copy of the same investigation summary submitted as Exhibit B (Movant's Ex. C); and a Consultation Report dated December 6, 2023(Movant's Ex. D).  Though Cabrera's counsel was directed to file the exhibits under seal on ECF, no application to file under seal has been made.  See ECF No. 145 at 2:20-3:4.  Defendants' counsel is reminded of this Court's direction which conforms to the rules of the Southern District of New York.  Further, all documents submitted as exhibits must be clearly marked.
[4] As the Government informed in their opposition, the Government provided the Court, ex parte and under seal, two exhibits showing the evidence presented to the grand jury in connection with a previous superseding indictment.  The exhibits are: (1) the transcript of the February 15, 2022 grand jury proceeding (Government's Ex. A); and (2) an exhibit used during the grand jury proceeding (Government's Ex. B).  Having reviewed these exhibits, they do not change the analysis in this Opinion.

See ECF No. 165 ("Reply"). This Memorandum and Order addresses movants' motion.

## FACTUAL BACKGROUND[5]

On August 25, 2021, Mr. Rahman died from an overdose while in a holding cell. Mot. at 4; Opp. at 4. According to an investigation summary from the New York Police Department, on that same day at 5:20 p.m., three items were recovered by a police officer: (1) a ripped "Phat Batch"-stamped glassine envelope; (2) an unstamped, ripped glassine envelope; and (3) a ripped green ziplock bag. See Mot. at 5; see also Opp. at 4. The investigation summary also indicates that at 8:05 p.m., Detective Ierna recovered the following additional items: (1) three "Phat Batch"-stamped ripped glassine envelopes; (2) three unstamped, ripped glassine envelopes; (3) one "Supreme"-stamped ripped glassine envelope; and one ripped green ziplock bag. See Mot. at 6; see also Opp. at 4.

Following Mr. Rahman's death, the NYPD searched two individuals that were in the holding cell along with Mr. Rahman. Mot. at 4; Opp. at 5. One individual was in possession of 30 "Supreme"-stamped glassines, while the other was in possession of

---

[5] Movant's motion to dismiss is based primarily on evidence from an investigation summary detailing evidence collected by police. To contextualize the Court's rulings on the legal issues presented, the Court summarizes the following facts from the parties' submissions of January 4, 2024 and January 31, 2024, other than Government's Exhibits A and B. See ECF Nos. 140, 159. For the avoidance of doubt, movants have pleaded not guilty, see ECF Nos. 72 at 2:10-12, 97 at 4:23-25, and are presumed innocent unless and until convicted.

186 glassines, some of which were stamped "Phat Batch."  Mot. at 5; Opp. at 5.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), a defendant may move to dismiss an indictment if there was "an error in the grand-jury proceeding or preliminary hearing."  Fed. R. Crim. P. 12(b)(3)(A)(v).  Grand juries are "accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." United States v. R. Enters., Inc., 498 U.S. 292, 301 (1991) (quoting United States v. Mechanik, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring)) (emphasis added); see also Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) ("dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.") (internal citations and quotation marks omitted). Indeed, "[d]ismissal of an indictment because of a defect in the grand jury proceedings is a drastic remedy that is rarely used." United States v. Silver, 103 F. Supp. 3d 370, 376 (S.D.N.Y. 2015) (internal quotations and citations omitted).  In the Second Circuit, the dismissal of an indictment is justified "to eliminate prejudice to a defendant; or, pursuant to our supervisory power,

4

to prevent prosecutorial impairment of the grand jury's independent role." United States v. Hogan, 712 F.2d 757, 761 (2d Cir. 1983) (citing United States v. Fields, 592 F.2d 638, 647 (2d Cir. 1978), cert. denied, 442 U.S. 917 (1979)).  This authority "is narrowly circumscribed to instances where the misconduct at issue amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's functions." Silver, 103 F. Supp. 3d at 376–77 (internal quotations and citations omitted).

Moreover, the secrecy of grand jury proceedings is fundamental to our criminal justice system.  See United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958).  Therefore, a party seeking disclosure of grand jury minutes must "show a 'particularized need' that outweighs the need for secrecy." United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978); see also Fed. R. Crim. P. 6(e)(3)(E)(ii).  Such review is rarely granted without specific factual allegations of government misconduct, Moten, 582 F.2d at 662, and unsupported suspicions of grand jury abuse are not sufficient to justify disclosure of grand jury minutes, see United States v. Carter, No. 04 Cr. 594 (NRB), 2005 WL 180914, at *5 (S.D.N.Y. Jan. 25, 2005) (citing United States v. Abrams, 539 F. Supp. 378, 389 (S.D.N.Y. 1982)).  This standard applies to in-camera review of grand jury proceedings as well as disclosure to

5

parties. United States v. Sullivan, No. 02 Cr. 1144, 2004 WL 253316, at *6 (S.D.N.Y. Feb. 10, 2004).

## DISCUSSION

### A. Motion to Dismiss the Superseding Indictment

Movants argue that the dismissal of the superseding indictment is warranted, and that the enhanced penalty in Count One should be struck, because the Government knowingly presented fabricated evidence that substantially influenced the grand jury. See Mot. at 15-16. Specifically, movants contend that the "Supreme"-stamped glassine was recovered "mysteriously and conveniently, for purposes of indicting Mr. Cabrera." Mot. at 10. They also state that the "crime scene was not [preserved] after the first search, as the two individuals who smuggled drugs into the precinct were not searched and left inside the small holding cell," and, without providing any evidence, that "Detective Ierna falsely stated he found the SUPREME glassine [] in plain view [] on the ground in the small 8x11 square foot holding cell . . . ." Reply at 3, 3 n.1. In response, the Government maintains that it did not fabricate evidence or engage in misconduct. Opp. at 9.

Movants provide no actual evidence of falsification of any evidence and merely support their claim with a consultation report. Based on a review of police and investigative reports, the consultation report by movants' forensic consultant summarily concludes that "there were no glassine envelopes found adjacent or

6

in the vicinity of Mr. Rahman.  If so, they were not properly collected as evidence."  Movants' Ex. D ¶ 12.  The consultation report is merely speculative and likely inadmissible at trial. Movants fail to provide any particularized proof that the "Supreme"-stamped glassine was not on the floor and instead argue that the evidence was fabricated because it was collected a few hours after the first evidence was recovered.  At best, movants can only demonstrate that two separate searches took place and that the second search recovered one "Supreme"-stamped glassine, as well as potentially exculpatory material of three "Phat Batch"-stamped glassines and other glassines and baggies that were not stamped.[6]

Without any particularized proof of fabrication, movants rely on cases in the 42 U.S.C. § 1983 context in an attempt to invoke the legal standard in civil cases to argue that they have met the burden for their fabricated evidence claim.[7]  See Mot. at 14 (citing Barnes v. City of New York, 68 F.4th 123 (2d Cir. 2023) and Frost v. New York City Police Dep't, 980 F.3d 231 (2d Cir. 2020)). However, this reliance is misplaced because those cases contained

---

[6] The Government maintains that movants' arguments about the alleged fabricated evidence are factual issues for the jury.  Opp. at 10.  The Court concurs.
[7] To the extent movants also cite these 42 U.S.C. § 1983 cases to show that the use of fabricated evidence violates a defendant's due process rights, the Court does not dispute that a prosecution based on fabricated evidence can violate due process.  See Barnes v. City of New York, 68 F.4th 123, 129 (2d Cir. 2023)(citing Ashley v. City of New York, 992 F.3d 128, 139 (2d Cir. 2021)). However, as discussed above, movants fail to provide any evidence of fabrication.

allegations or evidence beyond mere speculation. See, e.g., Barnes, 68 F.4th 123 at 129 (plaintiff supported his fabricated evidence claim that "[o]fficers knowingly lied to the prosecutor in relaying that they witnessed Barnes sell drugs" by alleging that "he was talking to a friend when the [officers] arrested him."); Frost, 980 F.3d at 242 (reversing a district court's dismissal of a malicious prosecution claim where the identifying witness declared his identification was based on officer coercion); Garnett v. Undercover Officer C0039, 838 F.3d 265, 270-71 (2d Cir. 2016) (fabricated evidence claim was supported by trial "testimony [that] was inconsistent with the testimony [the officer] had given before the grand jury."); McKinley v. Crevatas, No. 20 Civ. 3606 (KPF), 2023 WL 4364182, at *11 (S.D.N.Y. July 6, 2023) (finding that plaintiff met his burden on a motion for summary judgment on a fabricated evidence claim by providing detailed testimony that was inconsistent with an officer's written statements).

Moreover, the cases cited by movants only underscore that there must be particularized proof, which movants have not shown, rather than mere speculation. See, e.g., Hogan, 712 F.2d at 761 (reversing the conviction and remanding the case to dismiss the indictment where evidence provided to the grand jury was later proven to be false and grand jury transcripts showed that the Government used inflammatory rhetoric describing the defendant as

8

"a real hoodlum who should be indicted as a matter of equity"); United States v. Goldman, 451 F. Supp. 518, 519 (S.D.N.Y. 1978) (dismissing an indictment where the Government conceded that evidence provided to the grand jury had been falsified); United States v. Basurto, 497 F.2d 781, 784-787 (9th Cir. 1974) (reversing a conviction because the indictment was based on perjured testimony that was known to the Government).

Movants also provided the Court with a bulleted list of eleven cases, which they assert "are all applicable to [movants'] case," Mot. at 19-21, without providing any specific arguments as to how each case is applicable. Contrary to movants' assertion, all of the cases provided are inapposite and clearly distinguishable.[8] For example, in United States v. Brito, the Second Circuit declined to use its supervisory power to dismiss an indictment even when the grand jury witness "had little personal knowledge of the actions of the defendants" and the instructions provided to the grand jury about hearsay were delivered "clumsily." 907 F.2d 392, 395 (2d Cir. 1990). In addition, two of the cases concern

---

[8] In a particularly egregious example, movants' counsel relies on United States v. Brown, 462 F. Supp. 184, 189 (S.D.N.Y. 1978) rev'd, 602 F.2d 1073 (2d Cir. 1979). In that case, the district court dismissed an indictment where the Government's witness was a paid informer who was "a wholly amoral individual" and the Government "fail[ed] to take any steps whatsoever to insure the reliability of his version of events." Id. at 189. Further, contrary to counsel's obligation, she failed to reveal that the Second Circuit reinstated the indictment because there was no "claim that the prosecutor's office deceived the grand jury during the process of securing an indictment, or that the grand jury had insufficient information to support its decision to hand down the indictment." United States v. Brown, 602 F.2d 1073, 1077 (2d Cir. 1979).

9


prosecutorial misconduct, which is not alleged here.  See, e.g., United States v. Jacobs, 547 F.2d 772, 74-75 (2d Cir. 1976) (dismissing a perjury count because prosecutors did not warn the witness testifying to the grand jury that he was a target of the investigation, in a departure from the existing practice by every United States Attorney); United States v. Estepa, 471 F.2d 1132, 1134-35 (2d Cir. 1972) (reversing the conviction and remanding the case to dismiss the indictment because of the prosecution's use of hearsay testimony without "alert[ing] the grand jury to any limitations on [the witness'] knowledge.").  In the balance of the cases, the courts found issues with evidence presented to the grand jury that are not present here.  See, e.g., United States v. Tane, 329 F.2d 848, 850 (2d Cir. 1964) (affirming the dismissal of an indictment because evidence supporting the indictment was not properly obtained); United States v. Leeper, No. 06-CR-58A, 2006 WL 1455485, at *4 (W.D.N.Y. May 22, 2006) (dismissing an indictment where the grand jury was misled by knowledge of another grand jury's indictment and evidence that the grand jury was rushed by the Government); United States v. Hill, No. S 88 CR. 154 (MJL), 1989 WL 47288, at *7 (S.D.N.Y. Mar. 22, 1989) (dismissing certain counts of an indictment where the grand jury was presented irrelevant and prejudicial evidence); United States v. Vetere, 663 F. Supp. 381, 383 (S.D.N.Y. 1987) (dismissing an indictment because the grand jury was presented with non-relevant, highly

10

prejudicial evidence and testimony that "contained factual errors about the offense and factual errors about the target's background."); United States v. Castillo, No. 87 Cr. 437 (MJL), 1987 WL 16956, at *2 (S.D.N.Y. Sept. 4, 1987) (dismissing two counts of an indictment because the evidence presented to the grand jury was "plainly insufficient to support the charge"); United States v. Provenzano, 440 F. Supp. 561, 564-565 (S.D.N.Y. 1977) (dismissing an indictment where testimony provided to a grand jury for an earlier indictment was subsequently recanted and used to obtain a superseding indictment and the court held that "the Government was either aware or should have been aware of the unreliability of [the witness'] prior testimony").  Put simply, movants have failed to demonstrate the fabrication they allege, and therefore cannot begin to show Government misconduct or a violation that may have substantially influenced the grand jury.

**B. Grand Jury Minutes**

For the same reasons, movants have not demonstrated a particularized need for disclosure of the grand jury minutes.  The sole allegation of misconduct is the introduction of evidence from the second search of the holding cell, which movants have not shown to be fabricated.  To the extent movants make this request to evaluate whether exculpatory material was provided to the grand jury, the Supreme Court has stated that "[i]f the grand jury has no obligation to consider all 'substantial exculpatory' evidence,

11

we do not understand how the prosecutor can be said to have a binding obligation to present it." United States v. Williams, 504 U.S. 36, 53 (1992). Moreover, the Government represents that it followed the Department of Justice policy mandating that "when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person." Opp. at 8 n.5 (citing Department of Justice Manual 9-11.223, available at https://www.justice.gov/jm/jm-9-11000-grand-jury#9-11.233). Thus, this request is also denied.

### C. Exculpatory Evidence

Finally, movants also seek the disclosure of exculpatory material "related to the factual basis of Mr. Cabrera's showing that fabricated evidence was presented to the grand jury." Mot. at 1. While the Court does not fully understand this request, nevertheless, the Government represents that it "specifically disclosed in its initial discovery letter dated April 7, 2022, among other things, that other glassines stamped with the 'Phat Batch' logo were also recovered from the holding cell." Opp. at 10. In addition, the Government has previously stated on the record that it has and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). See ECF Nos. 11, 54

at 3:18-4:13. The Court accepts the Government's good faith assurances that it understands, has complied with, and will continue to comply with its disclosure obligations under Brady.

**CONCLUSION**

For the foregoing reasons, the motion is denied in all respects. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 140 and 151. Counsel is reminded to adhere to the deadlines in the Court's January 9, 2024 Order addressing pretrial submissions. See ECF No. 141.

**SO ORDERED.**

Dated:   March 5, 2024
         New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE